IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
JUL 3 0 2004
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____ DEPUTY CLERK

| | | |
|---|---|---|
| ROBERT T. O'DONNELL AND | § | |
| WILLIAM K. BROWN | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. A 03 CA 902 LY |
| | § | |
| GREG ABBOTT, ATTORNEY GENERAL | § | |
| FOR THE STATE OF TEXAS | § | |
| Defendant. | § | |

**DEFENDANT'S MOTION, WITH BRIEF, FOR SUMMARY JUDGMENT**

TO THE HONORABLE LEE YEAKEL:

In support of his motion for summary judgment ("Motion"), Hon. Greg Abbott, Attorney

General of Texas, defendant, respectfully submits the following.

28

# TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

INTRODUCTION AND NATURE OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STANDARDS FOR SUMMARY JUDGMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

   I.     The Plaintiffs Are Not "Other Obligees"<br>
         Within The Meaning Of Child Support Law . . . . . . . . . . . . . . . . . . . . . . . . . . 2

   II.    The Plaintiffs' Entitlement Is Not Enhanced<br>
         By GAL's Putative "Guardian Ad Litem" Status . . . . . . . . . . . . . . . . . . . . . . . 6

   III.   The Plaintiffs Have Not Been Deprived Of<br>
         Property Without Due Process . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        A.     The Plaintiffs have no Cognizable Property Interest . . . . . . . . . . . . . . . . 9

        B.     The Plaintiffs Suffered no Cognizable Deprivation . . . . . . . . . . . . . . . . 11

        C.     The Plaintiffs were not Denied Procedural Due Process . . . . . . . . . . . . 13

        D.     The Plaintiffs were not Denied Substantive Due Process . . . . . . . . . . . 15

   IV.   The Plaintiffs Have Not Been Subjected To A Taking<br>
         Of Property Without Just Or Adequate Compensation . . . . . . . . . . . . . . . . . . 16

        A.     The Plaintiffs have no Cognizable Property Interest . . . . . . . . . . . . . . . 17

        B.     The Plaintiffs Suffered no Cognizable "Taking." . . . . . . . . . . . . . . . . . 19

             1.     The Plaintiffs suffered no direct taking . . . . . . . . . . . . . . . . . . . 19

             2.     The Plaintiffs suffered no regulatory taking . . . . . . . . . . . . . . . 21

V.      The Plaintiffs Have Not Been Deprived Of Rights Under
        The Texas Administrative Procedures Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

VI.     The Plaintiffs Have Not Been Subjected To
        Unconstitutional Retroactive Seizure
        Of Property Or Application Of Legal Requirements . . . . . . . . . . . . . . . . . . . 25

        A.      The Plaintiffs have no Vested Right . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

        B.      The Defendant's Requirements were not
                Unconstitutionally Retroactive . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

VII.    The Plaintiffs Have Not Been Subjected To
        Unconstitutional Impairment Of Contractual Obligations . . . . . . . . . . . . . . . 29

        A.      The Plaintiffs have no Contract . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

        B.      The Plaintiffs have not been Subjected
                to Unconstitutional Impairment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

VIII.   The Defendant Has Not Violated The Separation Of
        Powers or Interfered with any Court's Jurisdiction . . . . . . . . . . . . . . . . . . . . 32

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

# TABLE OF AUTHORITIES

## CASES

*A.C. Aukerman Co. v. State,*
  902 S.W.2d 576 (Tex. App. – Houston [1st Dist.] 1995, writ denied) . . . . . . . . . . . . . . . . . . . 20

*Alenco Communications, Inc. v. Fed'l Communications Commission,*
  201 F.3d 608 (5th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Andrus v. Allard,*
  444 U.S. 51, 100 S.Ct. 318 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Armadillo Bail Bonds v. State,*
  802 S.W.2d 237 (Tex. Crim. App. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Austin Neighborhoods Council, Inc. v. Board of Adjustment of City of Austin,*
  644 S.W.2d 560 (Tex. App. – Austin 1982, writ refused n.r.e.) . . . . . . . . . . . . . . . . . . . . . . . . 33

*Baldwin v. Daniels,*
  250 F.3d 943 (5th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Basse Truck Line, Inc. v. Texas Natural Resource Conservation Com'n,*
  ___ S.W.3d ___, 2003 WL 21554293, *7 (Tex. App. – Austin 2003, review denied) . . . . . . 17

*Batterton v. Texas General Land Office,*
  783 F.2d 1220 (5th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Blackburn v. City of Marshall,*
  42 F.3d 925 (5th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Board of Curators v. Horowitz,*
  435 U.S. 78, 98 S.Ct. 948 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Board of Regents v. Roth,*
  408 U.S. 564, 92 S.Ct. 2701 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10,11

*Borden v. Trepalacios Rice & Irrigation Co.,*
  98 S.W.2d 11 (Tex. 1905) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Brennan v. Stewart,*
  834 F.2d 1248 (5th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Brinkley v. Texas Lottery Com'n,*
    986 S.W.2d 764 (Tex. App. – Austin 1999, no pet) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

*Brown v. Legal Foundation of Washington,*
    538 U.S. 216, 123 S.Ct. 1406 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

*Brown v. Patterson,*
    609 S.W.2d 287 (Tex. Civ. App. – Dallas 1980, no writ his.) . . . . . . . . . . . . . . . . . . . . . . . 25

*Bruni v. Bruni,*
    924 S.W.2d 366 (Tex. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Chandler v. Jorge A. Gutierrez, P.C.,*
    906 S.W.2d 195 (Tex. App. – Austin 1995, writ denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*City of Houston v. Todd,*
    41 S.W.3d 289 (Tex. App. – Houston [1st Dist.] 2001, review denied) . . . . . . . . . . . . . . . . 24

*Cleveland Board of Education v. Loudermill,*
    470 U.S. 532, 105 S.Ct. 1487 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Columbia Hosp. Corp. of Houston v. Moore,*
    43 S.W.3d 553 (Tex. App. – Houston [1st Dist.] 2001,
    *modified and remanded on other grounds,*
    92 S.W.3d 470 (Tex. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Concrete Pipe and Products of California, Inc. v. Construction*
    *Laborers Pension Trust for Southern California,*
    508 U.S. 602, 113 S.Ct. 2264 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

*Conner v. Lavaca Hosp. Dist.,*
    267 F.3d 426 (5th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Connolly v. Pension Ben. Guar. Corp.,*
    475 U.S. 211, 106 S.Ct. 1018 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Curtis v. Curtis,*
    11 S.W.3d 466 (Tex. App. – Tyler 2000, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Daniels v. Williams,*
    474 U.S. 327, 106 S.Ct. 662 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

iv

*Efe v. Ashcroft*,
    293 F.3d 899 (5th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Eller Media Co. v. City of Houston*,
    101 S.W.3d 668 (Tex. App. – Houston [1ˢᵗ Dist.] 2003, review denied) . . . . . . . . . . 17, 21, 22

*EPA v. New Orleans Pub. Serv., Inc.*,
    826 F.2d 361 (5th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 29

*Fowler v. Smith*,
    68 F.3d 124 (5ᵗʰ Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Frazier v. Lowndes County, Miss., Bd. of Educ.*,
    710 F.2d 1097 (5th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*General Services Com'n v. Little-Tex Insulation Col, Inc*,
    39 S.W.3d 591 (Tex. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 20

*Giovanni v. Lynn*,
    48 F.3d 908 (5th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Grocers Supply Co., Inc. v. Sharp*,
    978 S.W.2d 638 (Tex. App. – Austin 1998, review denied) . . . . . . . . . . . . . . . . . . 26, 27, 28

*Grunwald v. City of Castle Hills*,
    100 S.W.3d 350 (Tex. App. – San Antonio 2002, no pet.) . . . . . . . . . . . . . . . . . . . . . . 21

*Hallco Texas, Inc. v. McMullen County*,
    94 S.W.3d 735 (Tex. App. – San Antonio 2002, no pet. his.) . . . . . . . . . . . . . . . . . . 21, 22

*Hammond v. City of Dallas*,
    712 S.W.2d 496 (Tex. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Harrison v. Cox*,
    524 S.W.2d 387 (Tex. App. – Fort Worth 1975, writ ref. n.r.e.) . . . . . . . . . . . . . . . . . . 28

*Heller v. Doe*,
    509 U.S. 312, 113 S.Ct. 2637 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Hopkins v. Stice*,
    916 F.2d 1029 (5ᵗʰ Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*In re A.V.*,
   113 S.W.3d 355 (Tex. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 28

*In re Fort Worth Children's Hosp.*,
   100 S.W.3d 582 590 (Tex. App. – Fort Worth 2003, mandamus dismissed) . . . . . . . . . . . . . . 7

*In re J.B.W.*,
   99 S.W.3d 218 (Tex. App. – Fort Worth 2003, review denied) . . . . . . . . . . . . . . . . . . . . . 28, 29

*In re W.G.S.*,
   107 S.W.3d 624 (Tex. App. – Corpus Christi 2002, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Irving Independent School Dist. v. Tatro*,
   468 U.S. 883, 104 S.Ct. 3371 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Jocson v. Crabb*,
   133 S.W.3d 268 (Tex. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Landgraf v. USI Film Products*,
   511 U.S. 244, 114 S.Ct. 1483 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 26, 27, 28, 29

*Lapides v. Board of Regents of University System of Georgia*,
   535 U.S. 613, 122 S.Ct. 1640 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Levi v. Univ. of Texas at San Antonio*,
   840 F.2d 277 (5th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Lipscomb v. Columbus Mun. Separate School Dist.*,
   269 F.3d 494 (5th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30, 31

*Little-Tex Insulation Co., Inc.*,
   39 S.W.3d at 598 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Logan v. Zimmerman Brush Co.*,
   455 U.S. 422, 102 S.Ct. 1148 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Martin v. Memorial Hosp. at Gulfport*,
   130 F.3d 1143 (5th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*Matagorda County v. Law*,
   19 F.3d 215 (5th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 22

*Mayhew v. Town of Sunnyvale,*
    964 S.W.2d 922 (Tex. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 21

*McAllen Medical Center v. Rivera,*
    89 S.W.3d 90 (Tex. App. – Corpus Christi 2002, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . 7

*McAndrews v. Fleet Bank of Massachusetts, N.A.,*
    989 F.2d 13 (1ˢᵗ Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 28, 29

*McMurtray v. Holladay,*
    11 F.3d 499 (5th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*MDPhysicians & Associates, Inc. v. State Bd. Of Ins.,*
    957 F.2d 178 (5th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Parham v. J.R.,*
    442 U.S. 584, 99 S.Ct. 2493 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Penn Cent. Transp. Co. v. City of New York,*
    438 U.S. 104, 98 S.Ct. 2646 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 21

*Pitts v. Dallas County Bail Bond Bd.,*
    23 S.W.3d 407 (Tex. App. – Amarillo 2000, review denied) . . . . . . . . . . . . . . . . . . . . . . 24

*Public Util. Comm'n v. Cofer,*
    754 S.W.2d 121 (Tex. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Ragas v. Tennessee Gas Pipeline Co.,*
    136 F.3d 455 (5th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Ramirez v. Ahn,*
    843 F.2d 864, (5ᵗʰ Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 16

*Rieck v. Cockrell,*
    321 F.3d 487 (5th Cir.), *cert. denied,*
    538 U.S. 1038, 123 S.Ct. 2083 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Roberts v. Medical City Dallas Hosp., Inc.,*
    988 S.W.2d 398 (Tex. App. – Texarkana 1999, review denied) . . . . . . . . . . . . . . . . . . . . 24

*Rylander v. Palais Royal, Inc.,*
    81 S.W.3d 909 (Tex. App. – Austin 2002, review denied) . . . . . . . . . . . . . . . . . . . . . . . . 19

*Saenz v. Heldenfels Bros., Inc.*,
  183 F.3d 389 (5th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Schwartz v. State*,
  703 S.W.2d 187 (Tex. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Simi Inv. Co., Inc. v. Harris County, Tex.*,
  236 F.3d 240 (5th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Skidmore v. Swift & Co.*,
  323 U.S. 134, 65 S.Ct. 161 (1944) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Sosa By and Through Grant v. Koshy*,
  961 S.W.2d 420 (Tex. App. – Houston [1st Dist.] 1997, review denied . . . . . . . . . . . . . . . . . . 7

*State v. Montgomery*,
  957 S.W.2d 581 (Tex. App. – Houston [14th Dist.] 1997, pet. for discr. rev. ref'd) . . . . . . . . 32

*State v. Standard*,
  414 S.W.2d 148 (Tex. 1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*State/Operating Contractors ABS Emissions, Inc. v. Operating Contractors/State*,
  985 S.W.2d 646 (Tex. App. – Austin 1999, petition for review denied) . . . . . . . . . . . . . . . . 31

*Systems Contractors Corp. v. Orleans Parish School Bd.*,
  148 F.3d 571 (5th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Tarrant County Hosp. Dist. v. Henry*,
  52 S.W.3d 434 (Tex. App. – Fort Worth 2001, no pet. his) . . . . . . . . . . . . . . . . . . . . . . . 24

*Texas Office of Public Utility Counsel v. F.C.C.*,
  183 F.3d 393 (5th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Texas Workers' Compensation Com'n v. Continental Cas. Co.*,
  83 S.W.3d 901 (Tex. App. – Austin 2002, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Texas Workforce Com'n v. Midfirst Bank*,
  40 S.W.3d 690 (Tex. App. – Austin 2001, review denied),
  *cert. denied*, 538 U.S. 1013, 123 S.Ct. 1945 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20, 21

*Trail Enterprises, Inc. v. City of Houston*,
  957 S.W.2d 625 (Tex. App. – Houston [14th Dist.] 1997, review denied) . . . . . . . . . . . . . . . 31

*United States Fidelity & Guaranty Co. v. McKeithen*,
  226 F.3d 412 (5th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Univ. of Tex. Med. Sch. v. Than*,
  901 S.W.2d 926 (Tex. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*University of Texas at Austin v. Ables*,
  914 S.W.2d 712 (Tex. App. – Austin 1996, no writ.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*U.S. vs. Hickman*,
  331 F.3d 439 (5th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Vinson & Elkins v. Moran*,
  946 S.W.2d 381 (Tex. App. – Houston [14[th] Dist.] 1997,
  writ dismissed by agreement) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31, 32

*Washington Legal Foundation v. Texas Equal Access to Justice Foundation*,
  94 F.3d 996 (5th Cir. 996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Webb's Fabulous Pharmacies v. Beckwith*,
  449 U.S. 155, 101 S.Ct. 446 (1980) *affirmed*, 524 U.S. 156, 118 S.Ct. 1925 (1988),
  *on remand*, 86 F. Supp.2d 624 (W.D. Tex. 2000), *reversed and remanded*,
  270 F.3d 180 (5th Cir. 2001), *vacated and remanded*,
  538 U.S. 942, 123 S.Ct. 1654 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*White v. Sturns*,
  651 S.W.2d 372 (Tex. App. – Austin 1983, writ refused n.r.e.) . . . . . . . . . . . . . . . . . . . . 24, 25

*Williams v. Houston Firemen's Relief and Retirement Fund*,
  121 S.W.3d 415 (Tex. App. – Houston [1[st] Dist.] 2003, no pet. his.) . . . . . . . . . . . . . 25, 26, 27

*Williamson County Regional Planning Commission v. Hamilton Bank*,
  473 U.S. 172, 105 S.Ct. 3108 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Youngberg v. Romeo*,
  457 U.S. 307, 102 S.Ct. 2452 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**RULES**

Tex. R. Civ. Pro. 173 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

## STATUTES

42 U.S.C.A. § 654(26)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

42 U.S.C.A. § 654b(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

42 U.S.C. § 657(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

42 U.S.C. § 657(a)(2)(B)(i)(II)(aa) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

45 C.F.R. § 302.32 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

45 C.F.R. § 302.32(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

45 C.F.R. § 302.32(b)(2)(I) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

45 C.F.R. § 302.38 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Tex. Fam. Code § 101.001(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Tex. Fam. Code § 101.021 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Tex. Fam. Code § 107.001(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Tex. Fam. Code § 153.132(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Tex. Fam. Code § 153.133(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Tex. Fam. Code § 153.134(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Tex. Fam. Code § 153.371(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Tex. Fam. Code § 154.013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Tex. Fam. Code § 154.124 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Tex. Fam. Code § 154.130 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Tex. Fam. Code § 154.182 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Tex. Fam. Code § 155.001 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

Tex. Fam. Code § 155.002 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

x

TEX. FAM. CODE § 155.003 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

TEX. FAM. CODE § 156.405 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

TEX. FAM. CODE § 157.008 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

TEX. FAM. CODE § 159.102(12) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5

TEX. FAM. CODE § 231.101 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

TEX. FAM. CODE § 231.109(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

TEX. FAM. CODE § 234.006 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

TEX. FAM. CODE § 234.007 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

TEX. GOVT. CODE § ch. 2001 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

TEX. PROB. CODE § 676 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

## OTHER AUTHORITIES

12A TEX. JUR.3d *Constitutional Law* § 241 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

1996 U.S.C.C.A.N.2731 (H.R. Conf. Rep. No. 104-725) . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

TEX. CONST. art. I § 16 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

TEX. CONST. art. I § 17 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

TEX. CONST. art. I § 19 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

TEX. CONST. art. 2 § 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

U.S. CONST. art. I § 9 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

U.S. CONST. art. I § 10 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 29

U.S. CONST. art. VI cl. 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 29

U.S. CONST. art. I § 16 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

## INTRODUCTION AND NATURE OF THE CASE

The plaintiffs, who run a private child support collection agency, sued the Attorney General of Texas in Travis County district court, seeking declaratory, injunctive, and monetary relief for alleged violations of their rights under several provisions of the United States and Texas constitutions, as well as the Texas Administrative Procedures Act. The defendant removed the suit to this Court.

As shown in the Argument, the federal and state constitutional claims are parallel, and so are examined together.

## FACTS

The facts supporting this summary judgment motion is set out, with supporting evidence, in the Facts Appendix.  Affidavits authenticating the exhibits cited below are included with the Facts Appendix.

## STANDARDS FOR SUMMARY JUDGMENT

The standards for summary judgment are well established.

A party is entitled to summary judgment if it can demonstrate that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  Once a movant who does not have the burden of proof at trial makes a properly supported motion, the burden shifts to the nonmovant to show that a summary judgment should not be granted.  A party opposing such a summary judgment motion may not rest upon mere allegations contained in the pleadings, but must set forth and support by summary judgment evidence specific facts showing the existence of a genuine issue for trial.  Summary judgment is not a disfavored procedural shortcut, but rather an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action.  When ruling on a motion for summary judgment, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion.

> Needless to say, unsubstantiated assertions are not competent summary judgment evidence. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.

*Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citations, quotation marks, and ellipse omitted).

## ARGUMENT

**I.    The Plaintiffs Are Not "Other Obligees" Within The Meaning Of Child Support Law.**

Most of the issues in this case are resolved on the basis of the meaning of the words "other obligees" in 42 U.S.C.A. § 654b(b)(1). Because they are not "other obligees," the plaintiffs have no right to receive payments from the state disbursement unit without the express written consent of the intended beneficiaries.

As shown in Exhibit E, regional officials of the federal agency overseeing the child support program have concluded that GAL, specifically, is not an "other obligee" within the meaning of the statute. In relevant part, the regional program manager's December 19, 2003 letter to the First Assistant Attorney General (Exhibit E-4) explains:

> The term obligee does not extend to the Guardian ad Litem. The definition of obligee used in the Child Support Enforcement program is from the Uniform Interstate Family Support Act (UIFSA) [under which] The obligee is . . . an individual to whom a duty of support is . . . owed . . .

> The Guardian ad Litem does not qualify as an "other obligee" because a duty of support is never owed to the GAL. Even though the GAL may be considered an Officer of the Court, they do not qualify as an "other obligee" because child support is not owed to the Court or to an Officer of the Court.

The Uniform Interstate Family Support Act is a model statute that Texas and other participating states have each adopted. As incorporated into the Texas Family Code, it reads in relevant part: "'Obligee' means . . . an individual to whom a duty of support is or is alleged to be owed or in whose favor a support order has been issued or a judgment determining parentage has been rendered . . ." TEX. FAM. CODE § 159.102(12).

The interpretation of a statute by the agency charged with its enforcement is entitled to great weight and deference. *Irving Independent School Dist. v. Tatro*, 468 U.S. 883, 891-92, 104 S.Ct. 3371, 3376-77 (1984); *Efe v. Ashcroft*, 293 F.3d 899, 903-04 (5th Cir. 2002). While they are not entitled to the same degree of deference as formal regulations implementing the statute, letter opinions from agency administrators "constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *MDPhysicians & Associates, Inc. v. State Bd. of Ins.*, 957 F.2d 178, 186 n. 9 (5th Cir. 1992) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 139, 65 S.Ct. 161, 164 (1944)).

The regional office's interpretation is consistent with the formal regulations of the U.S. Department of Health and Human Services, which are entitled to the highest level of deference. To receive federal child support funding, the state must have an approved plan providing that "support payments . . . collected for a recipient of aid under the State's title IV-A plan" (formerly AFDC, now TANF) "shall be made to the State disbursement unit and shall not be paid directly to the family." 45 C.F.R. § 302.32(a).

Then "the SDU sends payment to the family . . ." *Id.* at (b)(2)(I). Significantly, "The State plan shall provide that any payment required to be made under §§ 302.32 . . . to a family will be

3

made *to the **resident parent, legal guardian, or caretaker relative having custody** of or responsibility for the child or children.*" 45 C.F.R. § 302.38 (emphasis added). The plaintiffs do not claim that GAL has been appointed legal guardian of the minor children under TEX. PROB. CODE § 676.

The regulations and the regional office's interpretation are both consistent with the emphasis in the statute. For example, for Title IV beneficiaries, federal law requires in relevant part that "an amount collected on behalf of a family as support by a State pursuant to a plan approved under this part shall be distributed [to] (1) *Families* receiving assistance [and] (2) *Families* that formerly received assistance . . ." 42 U.S.C. § 657(a) (emphasis added). "The State shall first distribute the amount so collected . . . *to the family* . . ." *Id.* at (a)(2)(B)(i)(II)(aa) (emphasis added).

The House-Senate Conference Committee that drafted the final language of the 1996 legislation understood "custodial parents and other obligees" to refer to adults performing parental functions. "The Disbursement Unit must be used to collect and disburse support payments [and] to promptly *distribute money to custodial parents* or other States . . ." 1996 U.S.C.C.A.N. 2731 (H.R. Conf. Rep. No. 104-725 at 343) (emphasis added).

State law implementing federal child support requirements likewise uses the term "obligee" to refer to the adult caring for the minor child for whose support the payments are made, and not to an intermediary whose only role is to collect payments. Repeatedly, the Texas Family Code describes the child support "obligee" in terms of characteristics GAL does not (and cannot) possess, obligations GAL does not (and cannot) fulfill, and rights GAL does not (and cannot) exercise. *See, e.g.*, TEX. FAM. CODE §§ 154.013 (providing requirements for the continuation of the duty to pay

4

child support following the death of the obligee); 154.130 (providing requirements for amount of child support owed, which takes into consideration the net resources of the obligee per month); 154.182 (providing requirements for health insurance for children, including whether or not obligee has health insurance available); 156.405 (discussing the effect of changes in lifestyle of the obligee on child support obligations of obligor); 157.008 (discussing affirmative defense to enforcement of child support order that the obligee voluntarily relinquished possession of the child to the obligor); 231.101 (allowing review of the child support order every three years if requested by the obligee or obligor).

In this context, the term "other obligee" can only mean someone other than the custodial parent who nevertheless performs child care and other parental functions. A mere conduit for collected payments would not fall into that category.

The plaintiffs seek to rely on TEX. FAM. CODE § 101.021, in which "obligee" is defined as "a person or entity entitled to receive payments of child support, including an agency of this state or of another jurisdiction to which a person has assigned the person's right to support." However, the same chapter provides that: "If, in another part of this title,[1] a term defined by this chapter[2] has a meaning different from the meaning provided by this chapter, the meaning of that other provision prevails." TEX. FAM. CODE § 101.001(b). As an example, pursuant to this provision, the definition in § 159.102(12), quoted above, would take precedence. Moreover, the plaintiffs do not assert, nor could they show, that any of the parties to the child support orders ever assigned their rights of support to GAL.

---

[1] Title 5, "The Parent-child Relationship and the Suit Affecting the Parent-Child Relationship."

[2] Chapter 101, "Definitions."

Because the plaintiffs are not "other obligees," child support payments may be sent to them from the state disbursement unit only with the consent of the obligee beneficiaries. A December 2002 directive to "State IV-D Directors" by the Commissioner of the U.S. Office of Child Support Enforcement clarified that while the state disbursement unit is not precluded from "sending child support payments to an entity requested by a custodial parent *if authorization to do so has been obtained*," nevertheless "[s]ending a payment in the custodial parent's name to the address *that he/she requests*, including that of an attorney or a private collection agency, should not change the fact that the custodial parent or other obligee named in the child support order remains the payee." Exh. F [3] (emphasis added).

In light of the foregoing, it is not an undue burden to expect the plaintiffs to produce the custodial parent's signed consent before the Attorney General sends child support payments directly from the state disbursement unit to the plaintiffs. Thus, as more fully examined in III-A and IV-B below, the insistence on an executed release form is not an unconstitutional deprivation.

## II. The Plaintiffs' Entitlement Is Not Enhanced By GAL's Putative "Guardian Ad Litem" Status.

The plaintiffs argue that by virtue of GAL's appointment, by the family courts of Collin County and two such courts in Dallas County, as "guardian ad litem," they have stepped into the shoes of the custodial parents for child support receipt purposes and thereby "subsum[e] the presumption" in favor of child care decisions by fit parents. *E.g.*, Plaintiffs' Second amended Original Petition ("Complaint") (Exhibit A to the motion for preliminary injunction) ¶ 5.1. Based

---

[3] Also found online at http://www.acf.dhhs.gov/programs/cse/pol/PIQ/piq-02-02.htm.

on this premise, the plaintiffs accuse the Attorney General of "countermanding" the custodial

parents' decision, reflected in their agreement to the orders in question, that GAL act as "guardian

ad litem" in child support matters.

At the outset, it should be noted that GAL's supposed appointment under TEX. R. CIV. PRO.

173 is highly unusual, if not questionable. "A guardian ad litem is not an attorney for the child but

an officer appointed by the court to assist in properly protecting the child's interests." *Jocson v.*

*Crabb*, 133 S.W.3d 268, 271 (Tex. 2004). "A trial court abuses its discretion if it appoints a

guardian ad litem under [Rule 173] subsection (b) in the absence of a conflict or if the trial court

does not discharge the guardian ad litem when the conflict has ended." *In re Fort Worth Children's*

*Hosp.*, 100 S.W.3d 582, 591 (Tex. App. – Fort Worth 2003, mandamus dismissed).

"This rule authorizes the appointment of a guardian ad litem only when a minor is

represented by a next friend or guardian who appears to the court to have an interest adverse to the

minor." *Sosa By and Through Grant v. Koshy*, 961 S.W.2d 420, 424 (Tex. App. – Houston [1st

Dist.] 1997, review denied). Consequently, "the test for appointment of a guardian ad litem is [not]

whether such appointment would be in the 'best interest of the child.'" *McAllen Medical Center v.*

*Rivera*, 89 S.W.3d 90, 94 (Tex. App. – Corpus Christi 2002, no pet.). "Rather, the court should look

to whether the next friend bringing suit on behalf of the child has interests that may run adverse to

that minor plaintiff," including the "potential for conflict during trial or settlement negotiations ."

*Id.*

The plaintiffs have not identified what interests the custodial parents in their cases have that

are actually or potentially adverse to those of the minor children. A potential conflict over how to

spend the child support payments would not suffice because GAL has no involvement once the payment is collected and turned over to the custodial parent.[4]  Moreover, alleging a conflict runs counter to the plaintiffs' argument that the custodial parents are legally presumed to act in the best interests of their children. *E.g.*, Complaint ¶ 5.1 (citing *Parham v. J. R.*, 442 U.S. 584, 604, 99 S.Ct. 2493, 2505 (1979) (discussing "the traditional presumption that the parents act in the best interests of their child")).

Instead of a conflict of interest, GAL's rationale for its role is that the custodial parents lack the skills and resources to pursue collection of arrearages through litigation.  While that may be true, and would support a custodial parent's voluntary selection of GAL as her or his representative in such matters,[5] it is not a legal conflict of interest between custodial parent and child.

The plaintiffs are careful to rely on Rule 173 as the basis for their asserted "guardian ad litem" status although the Texas Family Code has a provision defining "guardian ad litem" for suits affecting the parent-child relationship.

> "Guardian ad litem" means a person appointed to represent the best interests of a child.  The term includes:
>
> (A)  a volunteer advocate appointed under Subchapter C;
>
> (B)  a professional, other than an attorney, who holds a relevant professional license and whose training relates to the determination of a child's best interests;
>
> (C)  an adult having the competence, training, and expertise determined by the

---

[4] The orders naming GAL "guardian ad litem" do not authorize GAL to seek relief on behalf of the minor child against the custodial parent with respect to how the child support money is used once it is received.

[5] But note that the Office of Attorney General is already responsible under federal and state law for bringing legal action to recover delinquent child support payments for Title IV clients.  The Office employs over forty attorneys in the Dallas-Collins County area for that purpose.  Aff. of Sue Funk (Exhibit. 3).  From information provided by the plaintiffs to the defendant, it appears that almost two-thirds of GAL's clients fall in the Title IV-D program.  Aff. of Bill Irby (Exhibit 1).

8

court to be sufficient to represent the best interests of the child; or

(D)     an attorney ad litem appointed to serve in the dual role.

TEX. FAM. CODE § 107.001(5).  GAL obviously does not qualify under (A), (B), or (D), nor does

it claim to do so.  The only "competence, training, and expertise" asserted by the plaintiffs is in the

pursuit of child support payments, rather than as to the "best interests" of the children in any other

matter.  But even if the plaintiffs could be characterized as having been appointed under (C), the

mandate to act in the child's "best interests" – only in the collection and disbursement of child

support payments – cannot override subsequent specific federal and state legislation governing the

disbursement of child support payments from the "SDU."

Nor is GAL a "nonparent managing conservator," such as would entitle GAL to receive and

give receipt for payments for child support and to hold or disburse funds for the benefit of the child.

*See, e.g.*, TEX. FAM. CODE §§ 153.132(3) (a parent appointed as sole managing conservator of a child

has right to receive and give receipt for periodic payments for the support of the child and to hold

or disburse funds for the child's benefit); 153.133(a)(2) (parents can agree to be joint managing

conservators and make determinations as to support); 153.134(b)(2) (court-ordered joint

conservatorship can determine rights of support); 153.371(5) (nonparent appointed as sole managing

conservator has right to receive and give receipt for payments for child support and to hold or

disburse funds for child's benefit).

## III.     The Plaintiffs Have Not Been Deprived Of Property Without Due Process.

### A.     The Plaintiffs have no Cognizable Property Interest.

The plaintiffs claim a property interest in the $10 fee portion of each child support payment

9

for recipients in the cases in which GAL was previously appointed "guardian ad litem." They contend that by forwarding the payments directly to the intended beneficiaries, the Attorney General has deprived them of that "property."

To be entitled to due process, the plaintiffs must have a property interest in the benefit they claim has been taken or withheld from them. *Conner v. Lavaca Hosp. Dist.*, 267 F.3d 426, 437 (5th Cir. 2001); *Saenz v. Heldenfels Bros., Inc.*, 183 F.3d 389, 391 (5th Cir. 1999). Consequently, "[t]o bring a procedural due process claim . . ., a plaintiff must first identify a protected life, liberty or property interest and then prove that governmental action resulted in a deprivation of that interest." *Baldwin v. Daniels*, 250 F.3d 943, 946 (5th Cir. 2001); *Blackburn v. City of Marshall*, 42 F.3d 925, 935 (5th Cir. 1995).

The Texas due course of law provision, TEX. CONST. art. I § 19, provides essentially the same protection as the due process clause of the Fourteenth Amendment. *Univ. of Tex. Med. Sch. v. Than*, 901 S.W.2d 926, 929 (Tex. 1995). Under art. I §19, "[t]he word 'property' implies the same basic meaning as the word does in the Fourteenth Amendment to the Constitution of the United States." *University of Texas at Austin v. Ables*, 914 S.W.2d 712, 716 (Tex. App. – Austin 1996, no writ).

A property interest "is an individual entitlement grounded in state law, which cannot be removed except 'for cause.'" *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430, 102 S.Ct. 1148, 1155 (1982).

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.

*Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709 (1972). The creation of a property

interest is determined, for federal constitutional purposes, by state law. *Systems Contractors Corp. v. Orleans Parish School Bd.*, 148 F.3d 571, 574 n. 16 (5th Cir. 1998) (citing *Roth*, 408 U.S. at 577, 92 S.Ct. at 2709). *See also*, *Board of Curators v. Horowitz*, 435 U.S. 78, 83, 98 S.Ct. 948, 951 (1978) ("property interests are creatures of state law").

Under Texas law, a property interest must be stated in express and unambiguous terms, which are strictly construed in favor of the state. *Hopkins v. Stice*, 916 F.2d 1029, 1031 (5th Cir. 1990) (citing *Batterton v. Texas General Land Office*, 783 F.2d 1220, 1223 (5th Cir. 1986) (citing *State v. Standard*, 414 S.W.2d 148, 153 (Tex. 1967)). "[W]hatever is not unequivocally granted in clear and explicit terms is withheld," so that "[a]ny ambiguity or obscurity in the terms of the [property interest] must operate in favor of the state." *Schwartz v. State*, 703 S.W.2d 187, 189 (Tex. 1986).

The Minute Order whereby the Collin County judges amended their local rule to permit child support to be paid through GAL specifically provides: "It is further and finally ordered that the Guardian ad Litem herein appointed, and his successors, shall serve at the pleasure of the District Judges of Collin County, Texas, and *shall have no proprietary interest in* and to this appointment." Exh. G (emphasis added). The plaintiffs' status is thus "at will" and their expectation is unilateral. Further, by creating the new "SDU" requirements, state law withdrew whatever support it previously provided for the plaintiffs' putative property interest. At best, the plaintiffs' property interest is fatally ambiguous. (The insufficiency of the plaintiffs' asserted property interest is examined further in IV-A, VI-A, and VII-A below.)

**B.    The Plaintiffs Suffered no Cognizable Deprivation.**

11

Assuming *arguendo* that the plaintiffs have a property interest in the $10 fee portion of each payment, the defendant has not deprived them of it. The Attorney General has not seized, deducted, confiscated, or otherwise appropriated the money in question. Rather, his office has merely sent the money directly to the recipients contemplated by law. To access their alleged share of the money, the plaintiffs may either ask their alleged clients for their fee[6] or submit a completed consent form to the Attorney General for each recipient.

The consent form to which the plaintiff's object is actually an authorization to release child support-related information. Under federal child support law, the defendant is required to "have in effect . . . safeguards against unauthorized use or disclosure of information relating to proceedings or actions . . . to establish, modify, or enforce support . . ." 42 U.S.C. § 654(26)(A).

The plaintiffs argue against having to submit written consent from the custodial parents by citing reasons why parents might decline to execute the forms. Complaint ¶ 5.8. But this argument negates the plaintiffs' contention above, that the Attorney General has interfered with and "countermanded" the parents' presumptively valid choice of GAL to collect their support payments. The requested consent merely confirms the parent's presumptively valid preference.

Further, the plaintiffs complain that because of the defendant's "unilateral actions" they are now unable to determine which of their clients' obligors are delinquent in payment so that GAL can take legal action. Complaint ¶ 5.10. However, the consent forms the plaintiffs oppose would authorize the Office of the Attorney General to release exactly that information. Additionally, Dallas and Collin County have access to the payment records, so that the plaintiffs could obtain the

---

[6] Of course, the plaintiffs might have a difficult time explaining what benefit the client now derives in return for the fee. *See* the preceding footnote.

12

information through them if they are willing to share it.

At most, the Attorney General has interjected an additional bureaucratic step, the completion of a form, into the process, creating an inconvenience. Under the authorities above, this is a not a "deprivation" of property sufficient to trigger due process obligations.

### C.    The Plaintiffs were not Denied Procedural Due Process.

The plaintiffs appear to assert that because they did not receive the specific notice and hearing process provided under the Texas Administrative Code prior to the implementation of the new disbursement procedures, they have been denied constitutionally mandated due process. Assuming, for this argument only, a cognizable deprivation of property, the plaintiffs received all the process that was due.

First, for purposes of Fourteenth Amendment due process, while state law determines the nature and extent (if any) of the property interest, federal law determines what process is due. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 541, 105 S.Ct. 1487, 1493 (1985). Consequently, the omission of procedures authorized by state law that exceed the minimum process required by federal constitutional law is not a violation of federal due process. *Giovanni v. Lynn*, 48 F.3d 908, 912 (5th Cir. 1995) ("Mere failure to accord the procedural protections called for by state law or regulation does not of itself amount to a denial of due process"); *Ramirez v. Ahn*, 843 F.2d 864, 867 (5th Cir. 1988) ("As long as an individual receives notice and a hearing that satisfies federal due process, any violations of state law are completely irrelevant to constitutional analysis").

Second, as shown above, the plaintiffs' "deprivation" resulted from the decision of Congress, to which the Texas Legislature agreed to be bound, to require that child support payments be sent

directly to the state disbursement unit and from the SDU directly to specified categories of recipients not including entities such as GAL. "The Supreme Court long ago established that, when a legislature extinguishes a property interest via legislation that affects a general class of people, the legislative process provides all the process that is due." *McMurtray v. Holladay*, 11 F.3d 499, 504 (5th Cir. 1993).

Third, even if the "deprivation" here is attributed to the Attorney General rather than to Congress and the Legislature, the mere fact that the defendant's implementation of state policy, as his office interprets it, has an adverse impact on the plaintiffs' business does not trigger procedural due process.

> Generally applicable . . . quasi-legislative decisions, wherein the competency or integrity of the individual [plaintiff] is not in question, are not subject to procedural due process constraints, even though they result in a deprivation of a recognized liberty interest. Rather, such decisions are subject only to substantive due process analysis.

*Martin v. Memorial Hosp. at Gulfport*, 130 F.3d 1143, 1149 (5th Cir. 1997).

Finally, even if the plaintiffs were entitled to individualized procedural due process, the constitutional requirements were satisfied. "The essential requirements of due process . . . are notice and an opportunity to respond." *Loudermill*, 470 U.S. at 546, 105 S.Ct. at 1495. The plaintiffs indisputably were informed, via the letters to courts, obligors, and custodial parents, that henceforth the payments in question would go directly from the obligor to the SDU to the ultimate beneficiary. Since that time, the plaintiffs have had numerous extensive opportunities, in person and through correspondence, to argue to state child support officials why the payments should go from the SDU to GAL without the signed consent of the custodial parents. Aff. of Charles Smith; Exhs.C1- C16.

14

**D.     The Plaintiffs were not Denied Substantive Due Process.**

The plaintiffs allege that the defendant's refusal to divert child support payments to GAL without the written consent of the intended beneficiaries is arbitrary, capricious, and without rational basis.   In addition to requiring certain procedures for state deprivation of protected interests, constitutional due process "bars certain arbitrary government actions regardless of the fairness of the procedures used to implement them." *Daniels v. Williams*, 474 U.S. 327, 337, 106 S.Ct. 662, 678 (1986) (Stevens, J., concurring) (citing *Youngberg v. Romeo*, 457 U.S. 307, 102 S.Ct. 2452 (1982)).

The Court's "review of the [defendant]'s actions must be measured against the deferential 'rational basis' test that governs substantive due process." *Simi Inv. Co., Inc. v. Harris County, Tex.*, 236 F.3d 240, 249 (5th Cir. 2000).   "In cases such as this, where no fundamental right is implicated, the due process clause, of its own force, requires at a minimum that state action be supportable by some legitimate goal and that the means chosen for its achievement be rational, i.e., it is of no consequence that the state's method is over-inclusive or under-inclusive, so long as its legitimate goal may be attained by the means chosen." *Martin*, 130 F.3d at 1149.

"Whether this 'rational relation' in fact exists is a question of law . . ." *Simi Inv. Co.*, 236 F.3d at 249.   "If the question is at least debatable, there is no substantive due process violation." *Id.* at 251.

In terms of what justification is needed to make a decision nonarbitrary, substantive due process law closely parallels "rational basis" (or "minimum scrutiny") equal protection law.  *See, Fowler v. Smith*, 68 F.3d 124, 128 (5th Cir. 1995); *Levi v. Univ. of Texas at San Antonio,* 840 F.2d 277, 280 (5th Cir. 1988); *Brennan v. Stewart,* 834 F.2d 1248, 1257 (5th Cir. 1988).   The analogy to

15

minimum scrutiny equal protection indicates that the "rational basis" need not be articulated at the time of the challenged action or decision, so long as a rational justification is "conceivable" subsequently. *Cf., Heller v. Doe,* 509 U.S. 312, 319-21, 113 S.Ct. 2637, 2642-43 (1993).

It would not be enough to show, if the plaintiffs could, that the Attorney General has incorrectly interpreted and applied federal and state child support law. "We emphasize, as we have before, that the Constitution does not mandate error-free decision making." *Ramirez,* 843 F.2d at 869.

For the reasons shown in the Facts Appendix and in the Argument sections above, the state disbursement unit requirement is rationally related to the valid purposes of the child support program. A major inducement for federal entry into the child support field was the fact that single parents unable to obtain child support payments from their former spouses often turn to the federal-state AFDC (now TANF) program. The SDU requirement is rationally related to the goal of getting child support payments to their intended beneficiaries.

As further shown above, the defendant's conclusion that GAL is not an "other obligee" is at least debatable. The requirement of written consent by the custodial parent is rationally related to the obligation to disburse payments only to obligees.

## IV.   The Plaintiffs Have Not Been Subjected To A Taking Of Property Without Just Or Adequate Compensation.

The plaintiffs characterize the act of sending the child support payments directly to the intended beneficiary, rather than to GAL so that it can skim its charge off the top before passing the

payments on to the custodial parent, as an uncompensated taking of its property.  Complaint ¶¶ 6.2[7]

(relying on the Fifth Amendment (through the Fourteenth) and TEX. CONST. art. I § 17).  "Both the

United States and Texas Constitutions prohibit the taking of private property for public use without

just compensation."  *Basse Truck Line, Inc. v. Texas Natural Resource Conservation Com'n*, ___

S.W.3d ___, 2003 WL 21554293, *7 (Tex. App. – Austin 2003, review denied) (citing *Mayhew v.*

*Town of Sunnyvale*, 964 S.W.2d 922, 933 (Tex.1998)).

The plaintiffs' Fifth Amendment takings claim is not ripe until a final decision has been

rendered on their state law takings claim.  *Williamson County Regional Planning Commission v.*

*Hamilton Bank*, 473 U.S. 172, 186, 105 S.Ct. 3108, 3116 (1985).  By removing the suit, the

defendant waived the Eleventh Amendment immunity that otherwise would have deprived this Court

of jurisdiction to decide the state takings claim.[8]  Texas law on "takings" under article I § 17 is

consistent with federal law under the Fifth Amendment.  *Eller Media Co. v. City of Houston*, 101

S.W.3d 668, 682 (Tex. App. – Houston [1st  Dist.] 2003, review denied).

### A.    The Plaintiffs have no Cognizable Property Interest.

At the outset, the plaintiffs' takings claim confronts the same obstacle as their due process

claim above and their retroactivity and impairment of contractual obligation claims below.  "Given

that [the plaintiffs'] due process arguments are unavailing, it would be surprising indeed to discover

the challenged statute nonetheless violating the Takings Clause."  *Concrete Pipe and Products of*

---

[7]  The Complaint has two paragraphs in succession numbered 6.2. Each alleges unconstitutional takings.

[8]  Removal waives Eleventh Amendment immunity to state law claims for which a state has waived sovereign immunity in its own courts.  *Lapides v. Board of Regents of University System of Georgia*, 535 U.S. 613, 122 S.Ct. 1640 (2002). Article I § 17 waives the state's immunity to suit and liability in state court.  *General Services Com'n v. Little-Tex Insulation Co., Inc.*, 39 S.W.3d 591, 599 (Tex. 2001).

*California, Inc. v. Construction Laborers Pension Trust for Southern California*, 508 U.S. 602, 641,

113 S.Ct. 2264, 2289 (1993) (internal quotation marks omitted).

"State law defines 'property' and the United States Constitution protects private property

from government encroachment." *Washington Legal Foundation v. Texas Equal Access to Justice*

*Foundation,* 94 F.3d 996, 1000 (5th Cir. 1996) (citing *Webb's Fabulous Pharmacies v. Beckwith*, 449

U.S. 155, 161, 101 S. Ct. 446, 450 (1980) (internal citations omitted), *affirmed*, 524 U.S. 156, 118

S.Ct. 1925 (1998), *on remand*, 86 F. Supp.2d 624 (W. D. Tex. 2000), *reversed and remanded*, 270

F.3d 180 (5th Cir. 2001), *vacated and remanded*, 538 U.S. 942, 123 S.Ct. 1654 (2003).

It is important to recall here that the putative "property" in question is the GAL fee.  The

plaintiffs do not and cannot claim that they own the actual child support payments.  However, the

fee, if it is owed to GAL (which the defendant does not concede), is owed by the paying and recipient

parents.  By accepting payments to and distributing them from the state disbursement unit, the

Attorney General does not become the agent for, or assume the obligations of, either parent. *E.g.*,

*see* TEX. FAM. CODE § 231.109(d) ("An attorney employed to provide Title IV-D services represents

the interest of the state and not the interest of any other party").

The Attorney General has simply declined to collect the fee for GAL, by either deducting it

from the payment or, without written consent of the obligees, sending the payment to GAL to make

the deduction.  The plaintiffs remain free to seek payment from the parents of the fees owed (if they

are owed).

These facts distinguish the present case from *Texas Workforce Com'n v. Midfirst Bank*, in

which the plaintiff bank had a "perfected security interest" in the funds withheld by the state.

18

*Rylander v. Palais Royal, Inc.*, 81 S.W.3d 909, 915 (Tex. App. – Austin 2002, review denied) (discussing *Texas Workforce Com'n v. Midfirst Bank*, 40 S.W.3d 690 (Tex. App. – Austin 2001, review denied)), *cert. denied*, 538 U.S. 1013, 123 S.Ct. 1945 (2003). In *Midfirst*, the plaintiff bank could have had no claim against, or right to recover from, the third party former employees whose wage claims the state had paid using money from the third party's accounts receivable, on which the plaintiff bank had a security lien. *See also, Midfirst Bank*, 40 S.W.3d at 696, 697 (state did "not dispute that the warrants belonged to [plaintiff]").

The plaintiffs must have a reasonable "investment-backed expectation" of the benefit in order to have a property interest for purposes of a "regulatory takings" claim. *Texas Office of Public Utility Counsel v. F.C.C.*, 183 F.3d 393, 429 n. 59 (5th Cir. 1999)*; Matagorda County v. Law*, 19 F.3d 215, 224 (5th Cir. 1994) (citing *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124, 98 S.Ct. 2646, 2659 (1978)). "Those who deal with regulated industries are charged with notice that Congress may enact legislation to meet a given legislative goal." *Law*, 19 F.3d at 224 (citing *Connolly v. Pension Ben. Guar. Corp.*, 475 U.S. 211, 225, 106 S.Ct. 1018, 1026 (1986), *and McAndrews v. Fleet Bank of Massachusetts, N.A.*, 989 F.2d 13, 18 (1st Cir. 1993)). Child support has been a heavily regulated field, with substantial federal involvement and control, since the enactment of the Child Support Enforcement Act of 1984 and before.

**B.      The Plaintiffs Suffered no Cognizable "Taking."**

   **1.      The Plaintiffs suffered no direct taking.**

Even if the fee portion of child support payments is GAL "property," and even if the

disbursement could be called "for public use," neither of which the defendant concedes,[9] the plaintiffs' putative "property" has not been "taken" by the Attorney General. "Whether particular facts are enough to constitute a taking is a question of law." *General Services Com'n v. Little-Tex Insulation Co., Inc.*, 39 S.W.3d 591, 598 (Tex. 2001). "A plaintiff bears a substantial burden in proving that government action inflicts an unconstitutional taking." *United States Fidelity & Guaranty Co. v. McKeithen*, 226 F.3d 412, 416 (5th Cir. 2000).

The plaintiffs do not contest the Attorney General's right and duty to receive the payment from the obligor initially. As noted in IV-A above, the alleged "taking" consists of insisting on a signed authorization before the SDU releases the payment to GAL instead of sending it to the custodial parent. *See, Alenco Communications, Inc. v. Fed'l Communications Commission*, 201 F.3d 608, 624 (5th Cir. 2000) ("The Fifth Amendment protects against takings; it does not confer a constitutional right to government-subsidized profits"). If the parents do indeed owe the fees to GAL, their failure to pay them is not a "takings" by the state. *Cf., A.C. Aukerman Co. v. State*, 902 S.W.2d 576, 578 (Tex. App. – Houston [1st Dist.] 1995, writ denied) (the state's contract with suppliers who allegedly infringed plaintiff's patent rights did not constitute a taking by the state).

Although the defendant does not agree that the plaintiffs have a contractual right to the fees at issue (see VII below), and although the Attorney General was not originally a party to the alleged "contract" between the parents and GAL, nevertheless because the plaintiffs have asserted a

---

[9] The defendant recognizes that the Austin Court of Appeals (Yeakel, J.) has held that the Texas Workforce Commission's payments to individual wage claimants was "for public use" because "TWC acted in fulfillment of a public purpose." *Midfirst Bank*, 40 S.W.3d at 696. To preserve the issue for appellate review, if necessary, the defendant respectfully submits that the ruling was in error. *See, e.g., Borden v. Trepalacios Rice & Irrigation Co.*, 98 S.W.2d 11, 14 (Tex. 1905) ("Property is taken for public use as intended by the Constitution only when there results to the public some definite right or use *in the business or undertaking to which the property is devoted*") (emphasis added).

contractual right to the money allegedly "withheld" by the defendant, the controversy has some

attributes of a contractual dispute. "[T]he State does not have the requisite intent when money or

property is taken or withheld in the context of a contract dispute." *Midfirst Bank*, 40 S.W.3d at 696

n. 7 (citing *Little-Tex Insulation Co., Inc.*, 39 S.W.3d at 598-99). In this context, the Office of the

Attorney General is not acting "under its eminent domain powers." *Little-Tex Insulation Co., Inc.*,

39 S.W.3d at 599.

### 2.      The Plaintiffs suffered no regulatory taking.

In the alternative, the plaintiffs appear to assert a "regulatory taking." "Whether a

police-power regulation results in a taking is a question of law." *Eller Media Co.*, 101 S.W.3d at

682. "A 'taking' may more readily be found when the interference with property can be

characterized as a physical invasion by government than when interference arises from some public

program adjusting the benefits and burdens of economic life to promote the common good." *Id.* at

681 (quoting *Penn Cent. Transp. Co.*, 438 U.S. at 124, 98 S.Ct. at 2659) (internal quotation marks

and ellipse omitted). "The text of the Fifth Amendment itself provides a basis for drawing a

distinction between physical takings and regulatory takings." *Brown v. Legal Foundation of*

*Washington*, 538 U.S. 216, 233, 123 S.Ct. 1406, 1417 (2003).

"A compensable regulatory taking occurs if the governmental restrictions deprive landowners

of all economically viable use of their property or unreasonably interfere with their right to use and

enjoy the same." *Grunwald v. City of Castle Hills*, 100 S.W.3d 350, 353 (Tex. App. – San Antonio

2002, no pet.) (citing *Mayhew*, 964 S.W.2d at 935). "The loss of anticipated gains or potential future

profits is not usually considered in analyzing this factor." *Hallco Texas, Inc. v. McMullen County*,

94 S.W.3d 735, 738 (Tex. App. – San Antonio 2002, no pet. his.).

"But [for example] a government regulation that merely prohibits landlords from evicting tenants unwilling to pay a higher rent, that bans certain private uses of a portion of an owner's property, or that forbids the private use of certain airspace, does not constitute a categorical taking." *Brown*, 538 U.S. at 234, 123 S.Ct. at 1418. State action that is "adopted to accomplish a legitimate goal– [i.e., is] substantially related to health, safety, or general welfare of the people – and [is] reasonable, not arbitrary" cannot constitute a "taking" unless "the regulation (1) denies the owner all economically viable use of the property or (2) unreasonably interferes with the owner's rights to use and enjoy the property." *Eller Media Co.*, 101 S.W.3d at 682. "If reasonable minds may differ as to whether or not a particular [law] has a substantial relationship to the public health, safety, morals, or general welfare the [law] must stand as a valid exercise of the [state]'s policy power." *Id.* (internal quotation marks and ellipse omitted).

"In order for regulatory action to rise to the level of an unconstitutional taking, there must be a complete deprivation of the owner's economically viable use of his property." *Law*, 19 F.3d at 223. "Where an owner possesses a full 'bundle' of property rights, the destruction of one 'strand' of the bundle is not a taking, because the aggregate must be viewed in its entirety." *Andrus v. Allard*, 444 U.S. 51, 65-66, 100 S.Ct. 318, 327 (1979).

In its implementation of federal and state legislation that "substantially advance[s] a legitimate governmental interest" in the child support program, the Office of Attorney General has neither retained the fee money the plaintiffs claim nor absolutely refused to forward payments to GAL. Instead, the defendant has merely attached a condition – written authorization from the

custodial parent – which is rationally related to the objectives of the program and which at most places a temporary surmountable obstacle between the plaintiffs and their alleged "property." This does not rise to the level of a regulatory taking.

**V.     The Plaintiffs Have Not Been Deprived Of Rights Under The Texas Administrative Procedures Act.**

The plaintiffs argue that under the Texas Administrative Procedures Act, TEX. GOVT. CODE ch. 2001, and as a matter of constitutional due process, the Attorney General was required to go through formal rule-making procedures before sending the notice to courts and obligors to submit payments directly to the state disbursement unit. Complaint ¶¶ 6.2, 6.6. As shown above, the Legislature specifically directed the Office to immediately send such notice. TEX. FAM. CODE § 234.007.

"Not every statement by an administrative agency is a rule for which the APA prescribes procedures for adoption and for judicial review." *Brinkley v. Texas Lottery Com'n*, 986 S.W.2d 764, 767 (Tex. App. – Austin 1999, no pet.). The Attorney General faced federal and state statutory deadlines for having the state disbursement unit operational. The notice merely informed affected parties of new statutory requirements.

"If every expression by the agency as to 'law,' 'policy,' and procedural 'requirements' requires the promulgation of a formal rule, the agency could no longer exercise its 'informed discretion' to choose adjudication as a means of making law and policy, rather than rulemaking, a choice we have repeatedly said an agency has when it possesses both adjudicatory and rulemaking powers." *Brinkley*, 986 S.W.2d at 769. Here, it is not so much a matter of preferring to make policy by adjudication as the need to proceed with statutorily prescribed notice.

23

In *Brinkley*, a letter from the Texas Lottery Commission "to its licensees . . . setting forth criteria by which the licensees might ascertain the legal status of machines in their parlors," including "a warning that illegally operated machines exposed licensees to administrative and criminal penalties," did not have to be preceded by formal rulemaking. *Id.* at 767.

But even if the general provisions of the Texas Administrative Procedures Act would ordinarily have required the Attorney General to issue a rule, a subsequent specific provision of the Family Code relieved him of that mandatory obligation in this case, making it optional instead. At the same time it mandated the SDU, the Legislature specifically provided: "The Title IV-D agency . . . *may adopt* rules in compliance with federal law for the operation of . . . the state disbursement unit." TEX. FAM. CODE § 234.006.

"When construing a statute, Texas courts have long adhered to the distinction between permissive terms such as 'may' and mandatory terms such as 'shall.'" *Pitts v. Dallas County Bail Bond Bd.*, 23 S.W.3d 407, 418 (Tex. App. – Amarillo 2000, review denied). "The use of the word 'may' in a statute shows that the provision is directory and not mandatory." *Roberts v. Medical City Dallas Hosp., Inc.*, 988 S.W.2d 398, 402 (Tex. App. – Texarkana 1999, review denied).

A more specific statutory provision controls over a more general one. *Tarrant County Hosp. Dist. v. Henry*, 52 S.W.3d 434, 450 (Tex. App. – Fort Worth 2001, no pet. his.); *City of Houston v. Todd*, 41 S.W.3d 289, 300 (Tex. App. – Houston [1st Dist.] 2001, review denied) ("a provision dealing specifically with a subject matter controls over a more general provision") (citing *Hammond v. City of Dallas*, 712 S.W.2d 496, 498 (Tex.1986)). "The specific statute is thus regarded as an exception to, or a qualification of [a] general statute on the same subject . . ." *White v. Sturns*, 651

S.W.2d 372, 374 (Tex. App. – Austin 1983, writ refused n.r.e.).

Likewise, a later enacted provision trumps an earlier law on the same subject. *See Columbia Hosp. Corp. of Houston v. Moore*, 43 S.W.3d 553, 558 (Tex. App. – Houston [1st Dist.] 2001, review granted) ("One rule of statutory construction is that the later-enacted statute controls in case of a conflict", *modified and remanded on other grounds*, 92 S.W.3d 470 (Tex. 2002); *Brown v. Patterson*, 609 S.W.2d 287, 289 (Tex. Civ. App. – Dallas 1980, no writ his.) ("If there is a clear conflict, the later expression of legislative intent controls").

## VI.   The Plaintiffs Have Not Been Subjected To Unconstitutional Retroactive Seizure Of Property Or Application Of Legal Requirements.

The plaintiffs assert that the "diversion" of child support payments from GAL to the intended beneficiaries constitutes an unconstitutional "retroactive application" and retroactive "seizure" (TEX. CONST. art. I § 16) or "ex post facto" law (U. S. CONST. art. I §§ 9-10).  Complaint ¶¶ 6.2, 6.4, 6.5. "The Texas Constitution provides, 'No . . . retroactive law . . . shall be made.'" *Williams v. Houston Firemen's Relief and Retirement Fund*, 121 S.W.3d 415, 430 (Tex. App. – Houston [1st Dist.] 2003, no pet. his.) (ellipse original).

By contrast, the U.S. Constitution does not expressly proscribe the retroactive application of civil laws.  The "ex post facto" clauses of article I §§ 9-10 apply only to penal statutes. *Landgraf v. USI Film Products*, 511 U.S. 244, 266-67, 114 S.Ct. 1483, 1498 (1994); *U.S. v. Hickman*, 331 F.3d 439, 445 (5th Cir. 2003); *Rieck v. Cockrell*, 321 F.3d 487, 487-88 (5th Cir.), *cert. denied*, 538 U.S. 1038, 123 S.Ct. 2083 (2003).  Instead, from the penumbra of various constitutional provisions (including the takings clause examined above and the impairment of obligation of contracts clause examined below), the Supreme Court has inferred a rebuttable "presumption against retroactive

legislation." *Landgraf*, 511 U.S. at 265-66, 114 S.Ct. at 1497. "The Constitution's restrictions, of course, are of limited scope," so that "[a]bsent a violation of one of those specific provisions, the potential unfairness of retroactive civil legislation is not a sufficient reason for a court to fail to give a statute its intended scope." *Id.* at 267, 114 S.Ct. at 1498.

A.     **The Plaintiffs have no Vested Right**.

For reasons similar to those shown in III-A and IV-A above, the plaintiffs cannot satisfy the threshold prerequisite for a retroactivity claim. "This constitutional proscription is, however, limited to 'vested rights.'" *Williams*, 121 S.W.3d at 431. *Compare Landgraf*, 511 U.S. at 271, 114 S.Ct. at 1500 ("The largest category of cases in which we have applied the presumption against statutory retroactivity has involved new provisions affecting contractual or property rights").

A "right cannot be considered a vested right unless it is something more than such a mere expectation as may be based upon an anticipated continuance of the present general laws." *Grocers Supply Co., Inc. v. Sharp*, 978 S.W.2d 638, 643 (Tex. App. – Austin 1998, review denied). "[U]ntil the right becomes fixed or vested, it is lawful for the law-making power to declare that the given state of facts shall not fix it, and such laws have been constantly held not to be retroactive in the sense in which that term is used " in the Constitution. *Id.*

"However, no one has a vested right merely in the continuance of present law in relation to a particular subject; the Legislature may change laws so long as they do not destroy or prevent the adequate enforcement of vested rights." *Williams*, 121 S.W.3d at 431. As with the takings claim above, a "reasonable expectation" must take into account the fact that the area of child support collection and enforcement is heavily regulated.

The plaintiffs' expectation of having the fee they charge sent directly from the obligor to them depended on the continuation of the law as it stood at the time the original support orders were entered – i.e., under which it was entirely up to the court where the payments were to be sent. *See Williams*, 121 S.W.3d at 431 ("this expectancy is subordinate to the right of the Legislature to abolish the . . . system or to diminish [its] benefits"); *Grocers Supply Co., Inc.*, 978 S.W.2d at 643 ("when the authority granting the right has the power and discretion to take that right away, it cannot be said to be a vested right"). After the effective date of the 1996 Congressional enactments, the plaintiffs could no longer reasonably expect payments to be sent directly from the obligor parents to GAL.

**B.     The Defendant's Requirements were not Unconstitutionally Retroactive.**

For a variety of reasons, the challenged statutes and implementing actions either are not retroactive at all, within the meaning of the Constitution, or fall within exceptions to the anti-retroactivity policy.

First, for federal constitutional purposes, the presumption against retroactivity disappears when Congress makes its intent clear. *Landgraf*, 511 U.S. at 280, 114 S.Ct. at 1505. As shown in the Facts narrative above, Congress unequivocally mandated the redirection of child support payments for all non-Title-IV-D cases in which orders were entered after January 1994 and for all Tile IV-D cases regardless of the date of the order.

The "'valid exercise of the police power by the Legislature to safeguard the public safety and welfare' is a recognized exception to the unconstitutionality of retroactive laws." *In re A.V.*, 113 S.W.3d 355, 361 (Tex. 2003). "Statutes that may properly be retroactive include those calculated

27

to afford or facilitate remedies, such as curative acts, or to change procedure . . ." 12A TEX. JUR.3d

*Constitutional Law* § 241. "If a statute is remedial or procedural, it controls all affected proceedings

from the date it becomes law." *In re J.B.W.*, 99 S.W.3d 218, 224 (Tex. App. – Fort Worth 2003,

review denied). *See also Grocers Supply Co., Inc.*, 978 S.W.2d at 643 ("'procedural' or 'remedial'

statutes do not confer vested, or substantive, rights").

The challenged statutory revisions are both remedial and procedural. First, "in securing what

is in the best interests of the child, the State is . . . pursuing . . . a 'purely remedial function: the

protection of minors.'" *In re A.V.*, 113 S.W.3d at 361. Changing the method of collecting and

disbursing child support payments constitutes procedure, not substantive law. *In re W.G.S.*, 107

S.W.3d 624, 629-30 (Tex. App. – Corpus Christi 2002, no pet.) (because interpretation of statute to

allow prejudgment interest on child support arrearages accrued prior to enactment date of statute was

procedural and remedial, it therefore did not render statute unconstitutionally retroactive) (citing

*Harrison v. Cox*, 524 S.W.2d 387, 392 (Tex. App. – Fort Worth 1975, writ ref. n.r.e.) (Family Code

section setting forth means of enforcing child support order is remedial or procedural statute and is

thus not unconstitutional as being a retroactive although it applies to child support that accrues under

divorce decrees prior to its effective date)).

"A statute does not operate 'retrospectively' merely because it is applied in a case arising

from conduct antedating the statute's enactment, or upsets expectations based in prior law."

*Landgraf*, 511 U.S. at 269, 114 S.Ct. at 1499. "A law is not made retroactive because it alters the

existing classification of a thing." *EPA v. New Orleans Pub. Serv., Inc.*, 826 F.2d 361, 365 (5th Cir.

1987). "This means, of course, that a statute may modify the legal effect of a present status or alter

a preexisting relationship without running up against the retroactivity hurdle." *McAndrews,* 989 F.2d

at 16.

Impermissible retroactive laws are those that "create new obligations, impose new duties, or adopt new disabilities in respect to *transactions or considerations past*." *In re J.B.W.*, 99 S.W.3d at 223 (emphasis added). The test is thus "whether the new provision attaches new legal consequences to *events completed before its enactment*." *Landgraf*, 511 U.S. at 270, 114 S.Ct. at 1499. "The determination of whether a statute's application in a particular situation is prospective or retroactive depends upon whether *the conduct that allegedly triggers the statute's application* occurs before or after the law's effective date." *McAndrews*, 989 F.2d at 16 (citing *New Orleans Pub. Serv.*, 826 F.2d at 365).

In this case, nothing in the new arrangement affects any payments made and fees charged prior to the effective date of the act – or indeed, prior to the establishment of the state disbursement unit and the sending of the required notice. The "conduct that triggers the statute's application" is the payment of child support after the effective date of the act.

## VII.   The Plaintiffs Have Not Been Subjected To Unconstitutional Impairment Of Contractual Obligations.

The plaintiffs argue that by agreeing to the judgment awarding child support, the divorcing parents in each case entered into a contract for the services of GAL. From that premise, the plaintiffs contend that by insisting on the custodial parent's consent to the release of payments to GAL, the defendant has violated the plaintiffs' rights under U.S. CONST. art. I § 10 and TEX. CONST. art. I § 16. Complaint ¶ 6.3.

In nearly identical language, each provision prohibits the state from enacting a "law impairing

the obligation of contracts." "These two constitutional provisions are interpreted essentially identically." *Chandler v. Jorge A. Gutierrez, P.C.*, 906 S.W.2d 195, 203 n. 10 (Tex. App. – Austin 1995, writ denied). "[W]hile impairment of contract analysis has an air of due process about it, our analysis is distinct." *Lipscomb v. Columbus Mun. Separate School Dist.*, 269 F.3d 494, 504 (5th Cir. 2001).

All the plaintiffs may seek under this claim is a declaration. The target of the claim must be the legislation itself, not the Attorney General's interpretation and implementation of the statute. *Frazier v. Lowndes County, Miss., Bd. of Educ.*, 710 F.2d 1097, 1099 (5th Cir. 1983).

### A.      The Plaintiffs have no Contract.

"First, 'the threshold inquiry is whether the state law has, in fact, operated as a substantial impairment of a contractual relationship.'" *Lipscomb*, 269 F.3d at 504. The Texas Family Code expressly declares that the "[t]erms of the agreement pertaining to child support in the order may be enforced by all remedies available for enforcement of a judgment, including contempt, *but are not enforceable as a contract*." TEX. FAM. CODE § 154.124[10] (emphasis added).

Even if the plaintiffs could surmount this obstacle, "[i]n considering whether an impairment to contract is substantial, the court should consider the expectations of the parties with respect to changes in the law." *Lipscomb*, 269 F.3d at 504. "Particularly relevant to this inquiry is whether the subject matter of the contracts had been subject to regulation at the time the contracts were made." *Id.* See the discussion in F-1 above.

---

[10] Added in 1995. A limited exception, inapplicable to this case, occurs when the parties expressly agree to be contractually bound to continue child support payments after the child turns eighteen. *Bruni v. Bruni*, 924 S.W.2d 366, 367 (Tex. 1996).

**B.    The Plaintiffs have not been Subjected to Unconstitutional Impairment**.

"The Supreme Court has emphasized, however, that the absolute language of the Contract Clause does not create an absolute prohibition; a State must be given some accommodation in passing laws 'to safeguard the vital interests of its people.'" *Lipscomb*, 269 F.3d at 503-04. *Accord, Trail Enterprises, Inc. v. City of Houston*, 957 S.W.2d 625, 633 (Tex. App. – Houston [14th Dist.] 1997, review denied) ("The provision in the Texas constitution prohibiting laws which impair the obligations in contracts is not absolute and must be balanced against a state's interest in exercising its police power"); *Vinson & Elkins v. Moran*, 946 S.W.2d 381, 398 (Tex. App. – Houston [14th Dist.] 1997, writ dismissed by agreement) (same).

Consequently, because the child support enforcement program is "a valid exercise of the State's police power, it does not matter that legislation appropriate to that end has the result of modifying or abrogating contracts already in effect." *State/Operating Contractors ABS Emissions, Inc. v. Operating Contractors/State*, 985 S.W.2d 646, 655 (Tex. App. – Austin 1999, petition for review denied) (internal quotation marks omitted).  A "substantial impairment of contracts" can be justified by "a 'significant and legitimate public purpose behind the regulation, such as the remedying of a broad and general social or economic problem.'" *Lipscomb*, 269 F.3d at 504.

"In cases involving impairment of contracts between private parties, the court does not independently review the reasonableness of the legislation; it should defer to the judgment of the legislature." *Id.*

The legislation modified the "contract" in one limited sense: payments would no longer be sent by the obligor to GAL, but instead to the SDU.  However, if there was a valid obligation to pay

GAL $10 (which the defendant does not concede), that obligation remains. As noted above, the plaintiffs are not entitled to the child support payment. "Past due child support is properly characterized as an unfulfilled duty to the child rather than a debt to the custodial parent." *Curtis v. Curtis*, 11 S.W.3d 466, 471 (Tex. App. – Tyler 2000, no pet.). "The prohibition against the impairment of the obligation of contracts is directed against the impairment of the obligation rather than the contract." *Vinson & Elkins*, 946 S.W.2d at 398.

## VIII.  The Defendant Has Not Violated The Separation Of Powers or Interfered with any Court's Jurisdiction.

Finally, the plaintiffs claim that by "abrogating" the court orders appointing GAL to receive child support payments, the Attorney General has violated the separation of powers guaranteed by TEX. CONST. art. 2 § 1. "The separation of powers provision may be violated when one branch of government assumes or is delegated a power that is more properly attached to another branch or when one branch unduly interferes with another branch so that the other branch cannot effectively exercise its constitutionally assigned powers." *State v. Montgomery*, 957 S.W.2d 581, 583 (Tex. App. – Houston [14th Dist.] 1997, pet. for discr. rev. ref'd) (citing *Armadillo Bail Bonds v. State*, 802 S.W.2d 237, 239 (Tex. Crim. App. 1990)).

This claim deserves little space. It is high school civics that the legislative makes law and the executive branch implements law. As shown above, Congress and the Legislature have mandated that child support payments must be made to the state disbursement unit, which must then forward them to the obligees. The Attorney General has carried out that mandate. It was Congress and the Legislature who "abrogated" the provision in any Dallas or Collin County support order requiring the obligor to send payments to GAL.

If anything, the measures demanded of the defendant by the plaintiffs would violate the separation of powers. *See Texas Workers' Compensation Com'n v. Continental Cas. Co.*, 83 S.W.3d 901, 908 n. 9 (Tex. App. – Austin 2002, no pet.) ("A court or an agency may not write special exceptions into a statute so as to make it inapplicable under certain circumstances not mentioned in the statute") (brackets omitted; quoting *Public Util. Comm'n v. Cofer*, 754 S.W.2d 121, 124 (Tex.1988)); *Austin Neighborhoods Council, Inc. v. Board of Adjustment of City of Austin*, 644 S.W.2d 560, 566 (Tex. App. – Austin 1982, writ refused n.r.e.) ("An agency cannot waive what the legislature has demanded").

The plaintiffs' argument that in carrying out his statutory mandate, the Attorney General has interfered with the exclusive continuing jurisdiction of the courts in question, under TEX. FAM. CODE §§ 155.001-.003, is ludicrous. In each case, the judge's order that ex-spouse X pay child support amount A for the support of child Y by custodial parent Z remains in effect. The Legislature, complying with an act of Congress – *see* U.S. CONST. art. VI cl. 2 – changed the path by which such payments flow from the obligor to the obligee. Even if this constituted a diminution of the trial court's jurisdiction, which it does not, it is a power the Legislature may exercise, especially in a statutorily-created program.

## CONCLUSION

Attorney General Abbott is entitled to summary judgment on all claims against him.

Respectfully submitted,

GREG ABBOTT
Attorney General of Texas

33

BARRY R. McBEE
First Assistant Attorney General

EDWARD D. BURBACH
Deputy Attorney General for Litigation

JEFF L. ROSE, Chief
General Litigation Division

JAMES C. TODD
Texas Bar No. 20094700
Assistant Attorney General
General Litigation Division
P. O. Box 12548, Capitol Station
Austin, Texas   78711-2548
(512) 463-2120 (Telephone)
(512) 320-0667 (Facsimile)

ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been sent via courier on July 30, 2004, to:

Frank M. Reilly

Michelle A. McFaddin

Potts & Reilly, L.L.P.

401 West 15th Street, Suite 850

Austin, Texas 78701

James C. Todd
Assistant Attorney General

35

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

## Notice of Document/Attachment(s) Not Imaged but Stored with Document in Case File

### See Original File to View/Copy Document/Attachment(s)

Civil Case No.  A-03-CA-902 LY

ROBERT T. O'DONNELL, et al

VS.

GREG ABBOTT

Attachments to
Document #:  28

Description:  Defendant's Motion, With Brief, For Summary Judgment

File Date:  7/30/04

Prepared by:  MLC

## This sheet to be imaged as the last page.