IN THE UNITED STATES DISTRICT COURT
OF THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ROBERT T. O'DONNELL AND WILLIAM K. BROWN | § § § | |
| vs. | § § | CIVIL ACTION NO. A 03 CA 902 LY |
| GREG ABBOTT, ATTORNEY GENERAL OF THE STATE OF TEXAS | § § § § | |

**PLAINTIFFS' SUPPLEMENTAL BRIEF**

TO THE HONORABLE JUDGE LEE YEAKEL:

COME NOW, the Plaintiffs, Robert T. O'Donnell ("*O'Donnell*") and William K. Brown ("*Brown*"), hereinafter referred to as the "*Plaintiffs*," and file this, their Supplemental Brief, and would respectfully show the Court the following:

**I.
Summary of Legislative Changes**

A.   HB 2668

HB 2668 clarifies the Texas Family Code's definition of "Local Registry." The change in §154.241 of the Code explicitly provides that private entities, such as Plaintiffs, may perform the duties of local registries.

Subsection (g) was added to authorize a private entity to act as a "public entity . . . that serves a . . . court," and allows it to perform the duties and functions of a local registry. In particular, the law clarifies that a private entity, such as a guardian ad litem ("GAL"), may perform those duties "under an appointment by a court." A private entity, acting as a local registry, ". . . *shall* receive court ordered child support payment . . . and . . . forward the payment . . . to the . . . obligee within two working days after the date the local registry receives the payment." (Emphasis added) §154.241(a). A private entity, acting as a local registry, may also ". . . redirect and forward a child support payment to an address and in care of a person or entity designated by the obligee." §154.241(e).

B.  HB 1238

This bill added two subsections to TEX. FAM. CODE §234.008.

Subsection (d) specifically allows an entity to receive, disburse, and monitor child support payments based on an obligee's written consent to the State Disbursement Unit. Subsection (e) suggests a situation might arise in which Subsection (d) could be declared "null and void." In the event such a declaration is made, the Title IV-D Agency must publish a notice in the Texas Register that subsection (d) is not effective.

## II.
## EFFECT OF AMENDMENTS

A.  HB 2668 (Effective June 17, 2005)

Under the Texas Family Code, the term "obligee" now clearly includes Guardians ad Litem in their capacity as appointed representatives of the District Courts. Plaintiffs have always asserted that they are a local registry, and HB 2668 makes it indisputable that Plaintiffs are such.

The Family Code definition of "obligee" is "a person or entity entitled to receive payments of child support including an agency of this state. . ." TEX. FAM. CODE §101.021. The OAG has previously argued that Plaintiffs could not be considered an "agency" under this definition because they were not a state agency. Defendant's Response to Cross Motion for Summary Judgement and Reply in support of Summary Judgment (hereafter, "Defendant's Response") at pp 9-10.

HB 2668, by addressing activities rather than denomination, mandates that a private entity performing the duties and functions of a local registry is to be treated as a "public entity." Those duties and functions pertain to the receipt and distribution of child support payments, and the creation and maintenance of official records thereof. TEX. FAM. CODE §101.018, §154.241. A private entity performing local registry functions and duties is equated as a public entity when it performs such functions and duties under a contract with a county commissions court or a domestic relative office *or under an appointment by a court*. TEX. FAM. CODE §154.241 (g) (emphasis added). To the extent that the OAG was concerned about the Guardians ad Litem's private status, they can now indisputably be local registries. The State Bar of Texas' Family Law section report notes this effect of HB 2668:

"Private Enterprise Validated." John J. Sampson and Harry L. Tindall, "Texas Family Code Legislation Enacted by the 79th Session of the Texas Legislature," 2005-2 State Bar Section Report, Family Law (2005).

To the extent that the State has argued that other definitions of "obligee" in other parts of the Code must prevail over the general application of the definition contained in §101.021, the amendment of §154.241 states that "*notwithstanding any other law,* a private entity may perform the duties and functions of a local registry. . . ." TEX. FAM. CODE §154.241 (g) (emphasis added). This is especially applicable regarding the competing definition of §159.102(12) repeatedly tendered by the OAG. (*e.g.*, Defendant's Motion for Summary Judgment at p. 5), which must yield to the more recent legislative enactment.

Plaintiffs therefore, are properly "obligees" under the Family Code and "other obligees" under 42 U.S.C. §654b (b) (1).

B.   HB 1238 (Effective September 1, 2005).

1)   The OAG has repeatedly represented that it ". . . is quite willing to send child support payments from the State Disbursement Unit to the Guardian ad Litem once 'authorization to do so has been obtained.'" Defendants Response at 9.  This statement echoes the State's earlier representation that "the custodial parents' signed consent would be sufficient [for] the Attorney General [to send] child support payments directly from the state disbursement unit to the plaintiffs." Defendant's Motion for Summary Judgment at p. 6.

HB 1238 adds subsection (d) to TEX. FAM. CODE §234.008, which addresses the distribution and issuance of child support payments. The addition of the subsection allows the obligee of a final order in a parent-child relationship to designate an entity to receive, disburse, and monitor child support. The obligee's signature on the divorce decree that directs child support payments to the guardian ad litem effects this designation. TEX. FAM. CODE §234.008 (d).

The Office of Attorney General, which is "quite willing to send child support payments from the State Disbursement Unit to the Guardian ad Litem once 'authorization . . . has been obtained . . .'" now has that clear authorization.

2) Subsection (e) leaves possible future questions unanswered, but raises a contingency that is not now before the Court. Stripped to its essentials, the subsection says that if ". . . the Title IV-D agency [the OAG] is notified by the Federal Office of Child Support Enforcement . . ." that the agency's state's case registry (*see* 42 U.S.C. §654a(e)) and disbursement unit (*see* 42 U.S.C. §654b) have failed to meet the establishment and operation requirements described in these respective provisions of the U.S. Code, then subsection (d) is "null and void." In such an event, the OAG is required to publish notice of such in the Texas Register.

Since the State's case registry and disbursement unit have already been established, any notification by the federal government would have to pertain to the operations, not establishment. Further, Plaintiffs note that the new statutory language in subsection (e) is conjunctive, meaning that the federal office would have to find that subsection (d) results in the OAG's failure to meet the requirements of both 42 U.S.C. sections 654a(e) and 654b. Failure to meet both requirements is even more unlikely.

The Federal Office of Child Support Enforcement (OCSE) is already on record as stating that the issue of valid consent from a custodial parent for a third party, such as the GAL, to receive child support payments is "governed by State law." [*See* Exhibit P-24, OCSE Policy Interpretation Question (PIQ) 02-02, December 4, 2002; Exhibit P-25, PCSE PIQ 213 (1992) attached.] Therefore, it is highly unlikely that the OCSE will attempt to overturn the state law as enacted in HB 1238.

C.      Conclusion

The Federal regulations contemplate that state child support collection laws are to be given effect. The regulations provide as follows:

> Subject to the provisions and limitations of title IV-D of the Act and chapter III, Federal financial participation will be available in expenditures made under the State plan (including the administration thereof) in accordance with applicable State laws, rules, regulations, and standards governing expenditures by State and local child support enforcement agencies.

45 CFR §304.11. There are no provisions or limitations in Title IV-D of the Social Security Act or chapter III of Title 45 of the Code of Federal Regulations that are contrary to House Bills 2668 and 1238, or that would in any manner limit their effect. Therefore, the laws are to be given full effect.

Through the enactment of House Bills 2668 and 1238, the State of Texas has clarified that the Plaintiffs, as guardians ad litem, are a local registry that can receive and disburse child support payments in accordance with state law, and that the signature by a parent on a divorce decree constitutes valid consent by that parent to the GAL receiving that obligee's child support payments. While the legislative enactments have removed any doubt as to Plaintiff's claims in this lawsuit, Plaintiff still asserts that it should prevail in this litigation regardless of the changes to the law.

In essence, the subject matter of the litigation is moot, other than potential recovery by Plaintiffs of damages caused by the Defendant's actions as set forth in Plaintiff's pleadings before this Court.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs seek the relief sought in Plaintiffs Second Amended Petition and such further relief to which Plaintiffs are justly entitled.

Respectfully submitted,

**POTTS & REILLY, L.L.P.**

Frank M. Reilly
State Bar No. 16751985
Michael C. Crowley
401 West 15th Street, Suite 850
Austin, Texas 78701
Tel: (512) 469-7474 ; Fax: (512) 469-7480

By: _____
Michael C. Crowley
State Bar No. 05170300

**ATTORNEYS FOR ROBERT T. O'DONNELL AND WILLIAM K. BROWN**

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of Plaintiffs' Supplemental Brief has been served via hand-delivery on the following parties on this, the 3rd day of August, 2005:

James C. Todd
Assistant Attorney General
Office of the Attorney General
General Litigation Division
P. O. Box 12548, Capitol Station
Austin, Texas 78711-2548

*Michael C. Crowley*
Michael C. Crowley

PIQ-02-02

DATE: December 04, 2002

TO: State IV-D Directors

FROM: Sherri Z. Heller, Ed.D.
Commissioner
Office of Child Support Enforcement

SUBJECT: Requests by Custodial Parents for a Change of Address for the Disbursement of the Custodial Parent's Share of Child Support Collections

Our goal in issuing this PIQ is to clarify for State IV-D agencies the existing federal policy regarding requests by custodial parents[1] for a change of address for the disbursement of the custodial parent's share of child support collections. We previously issued policy guidance on whether payments received by the IV-D agency due to the custodial parent may be forwarded to a private collection agency instead of the custodial parent, at the custodial parent's request. PIQ-92-13 stated that "[n]othing in federal law precludes States from sending child support payments to an entity requested by a custodial parent if authorization to do so has been obtained. Such practices would be governed by State law."

In response to recent inquiries, we reiterate in this policy guidance that there are no federal statutory or regulatory authorities that prevent a state from honoring a request by a custodial parent for a change of address for the disbursement of his/her share of child support collections, even if the address is that of a third party, such as an attorney or a private collection agency. Under federal law, a payment sent by the IV-D agency to the custodial parent at his/her residence is no more or less valid than one sent to the custodial parent at, for example, a post office box, a private mailbox company, or "in care of" an attorney or a private collection agency.

Question 1: If a state honors a custodial parent's request for a change of address for the disbursement of child support payments, is the state in violation of the requirement that the state disbursement unit (SDU) disburse payments within two days of receipt of the payment?

Answer 1: No, as long as new payments are disbursed within 2 business days to the new address. Section 454B(b)(1) of the Social Security Act (Act) requires the SDU to use automated procedures "for disbursements to custodial parents and other obligees. . . ." Pursuant to section 454B(c)(1), the SDU generally must "distribute all amounts payable under section 457(a) within 2 business days after receipt from the employer or other source of periodic income, if sufficient information identifying the payee is provided." These requirements do not speak to the address to which payments due to the custodial parent must be sent. Federal law does not prevent states from sending child support payments to any particular address requested by the custodial parent.

---

[1] For purposes of this PIQ, the term "custodial parent" includes any child support obligee.

EXHIBIT
P-24

00025

Therefore, a state may send a child support payment to the custodial parent at any address that he/she requests without violating the two-day rule in section 454B(c) of the Act

Question 2: If a state honors a custodial parent's request for a change of address for the disbursement of child support payments, is the state in violation of the federal statutory and regulatory requirements that IV-D agencies make payments to the resident parent, legal guardian, or caretaker relative?

Answer 2: No. Section 454(11)(B) of the Act and 45 CFR 302.88 require payments to be made to the resident parent, legal guardian, or caretaker relative having custody of or responsibility for the child or children. These requirements identify the individual to whom the payments must be made (i.e., the payee), not the geographic address to which the payments must be sent. Federal law and regulations do not prevent states from sending child support payments to the address authorized by the custodial parent.

Question 3: If a state honors a custodial parent's request for a change of address for the disbursement of child support payments, is the state in violation of the federal statutory and regulatory requirements that IV-D agencies distribute certain collections to the family?

Answer 3: No. Section 457(a) of the Act and 45 CFR 302.32 require that states distribute child support amounts collected pursuant to an approved state plan to the family unless assigned to the federal or state share. For the reasons provided in our answers to Questions 1 and 2, sending payments "to the family" at the address of the custodial parent's choice fully satisfies a state's obligations under these provisions.

Question 4: Does changing an address for disbursement of support collections to the address of a private attorney, private collection agency or other address constitute a change of payee or a redirection or assignment of payments?

Answer 4: No. Merely honoring a change of address does not constitute a change of payee or a redirection or assignment of payments to someone other than the payee under a support order, unless state law provides otherwise. The mere mailing of a payment in a custodial parent's name to an address other than his/her residence does not change the payee to anyone other than the custodial parent. Sending a payment in the custodial parent's name to the address that he/she requests, including that of an attorney or a private collection agency, should not change the fact that the custodial parent or other obligee named in the child support order remains the payee. Only the entity that issued the support order may change the payee, in accordance with state law.

Question 5: Some state officials have suggested that they cannot honor a custodial parent's request for a change of address for disbursement of child support payments because the state's automated system only stores one address for each custodial parent and the state is concerned about sending legal notices and correspondence to such an address. Is this appropriate?

Response 5: No. Any state that has an automated system that has been certified as meeting the Family Support Act requirements should be able to maintain at least two addresses. Under 45

CFR 307.25(b), a state must have an automated system that meets the requirements in the OCSE guideline titled, "Automated Systems for Child Support Enforcement: A Guide for States" Objective A-8.b. of this guideline requires the state system to accept and maintain both a home and a mailing address for the custodial parent

In sum, state IV-D programs can send payments in the custodial parent's name to the address that he/she provides, unless otherwise prohibited by state law. States may not refuse to honor a custodial parent's request that payments be sent to a specific address on the basis that federal statute or regulations preclude such action.

cc:  ACF Regional Administrators
     Regional Program Managers

00027

PIQ-92-13

Date:      JUN 24, 1992

To:        ACF Regional Administrators

From:      Allie Page Matthews
           Deputy Director
           Office of Child Support Enforcement

Subject:   Private Child Support Agency Collections in non-AFDC
           IV-D Cases

This addresses several recent inquiries from Regional Offices and States requesting a policy clarification as to the treatment of non-AFDC IV-D cases in which the obligee has also contracted with a private collection agency to collect child support. We want to emphasize that the choice whether to pursue support enforcement with a public or private entity rests with the custodial parent. Our concern is that she make an informed choice, with full knowledge of the fees levied by the private entity and any other pertinent considerations.

The State of Massachusetts IV-D agency has recently developed an approach to these cases and we would appreciate hearing about other States' approaches. A copy of the Massachusetts information and forms is attached.

Question #1: Do Federal regulations allow a IV-D agency to suspend enforcement activities at the request of the non-AFDC obligee?

Response: Federal regulations governing the IV-D program do not permit a IV-D agency to suspend enforcement activities at the request of the non-AFDC obligee. Under §454(6) of the Social Security Act and the implementing regulations at 45 CFR 302.33, States must provide any necessary and appropriate services in a IV-D case regardless of whether the specific services were requested by the obligee. In addition, as we stated in the preamble to the Federal Standards for Program Operations Regulation (54 FR 32284, at 32303, August 4, 1989) in regard to the Federal income tax refund offset process, "when an individual receives IV-D services, they may not dictate which services they receive." For this reason, a IV-D agency may not "suspend" its enforcement activities.

Page 2 - ACF Regional Administrators


EXHIBIT P-25

00028

Question #2: May payments received by the IV-D agency from the obligor be forwarded to a private collection agency instead of to the custodial parent, at such parent's request?

Response: Nothing in Federal law precludes States from sending child support payments to an entity requested by a custodial parent if authorization to do so has been obtained. Such practices would be governed by State law.

Question #3: May a IV-D agency adopt a policy of requiring the IV-D obligee to request closure of her IV-D case if and while she has entered into a contract with a private collection agency for collection of child support?

Response: No, a IV-D agency may not adopt a policy of requiring a IV-D obligee to request case closure of her IV-D case while she has a contract with a private collection agency. Such a policy or requirement would not meet one of the criteria for case closure set forth at 45 CFR 303.11(b), and is therefore an inappropriate action by the IV-D agency. Although §303.11(b)(9) permits case closure at the request of the individual receiving non-AFDC IV-D services, such requests must be <u>voluntary</u> on such individual's part. Furthermore, as we stated <u>supra</u>, a recipient of IV-D services cannot dictate which services he or she receives. Rather, <u>all</u> appropriate services must be provided.

Similarly, it is OCSE's position that it would be inappropriate for a IV-D agency to close a case in an analogous situation, if the custodial parent hired a private attorney, because that too would not meet one of the case closure criteria set forth in §303.11. There are no case closure criteria which permit the unilateral closure of a IV-D case by the IV-D agency because the IV-D recipient has retained private counsel. Therefore, IV-D services must be provided regardless of whether a recipient of IV-D services has retained private counsel, unless the case meets at least one of the case closure criteria enumerated in 45 CFR 303.11(b). To suspend case activity because of retention of private counsel to handle certain actions would deny the applicant such services as Federal and State income tax refund offsets, full collection services by the Internal Revenue Service, and use of the Federal courts, which are available only to recipients of IV-D services. However, requiring that recipients of IV-D services notify the IV-D agency of the involvement of private counsel is appropriate, in order to prevent duplication of effort and to maximize the effectiveness of actions taken through coordinated efforts.

Question #4: Must a State comply with the request of a non-AFDC recipient of IV-D services to furnish extensive case information to a private collection agency that has been retained by the non-

00029

AFDC recipient of IV-D services?
Page 3 - ACF Regional Administrators


Response: Federal regulations at 45 CFR §303.21(a) specify the limited circumstances under which information concerning applicants or recipients of support enforcement services may be used or disclosed. Such disclosure is limited to purposes directly connected with: 1) the administration of the plan or program approved under parts A, B, C, or D of title IV or under titles II, X, XIV, XVI, XIX or XX or the supplemental security income program established under title XVI; 2) any investigations, prosecution or criminal or civil proceeding conducted in connection with the administration of any such plan or program; and 3) the administration of any other Federal or Federally assisted program which provides assistance, in cash or in kind, or services, directly to individuals on the basis of need. Release of information to a private collection agency, or to a private attorney, would not appear to fall within any one of the three enumerated purposes of §303.21(a) and, in addition, may violate other safeguarding rules such as those under the Internal Revenue Code at 26 U.S.C. 6103(p)(4) if tax information is disclosed.


Attachment 2

00030

# STATE BAR SECTION REPORT
# FAMILY LAW

http://www.sbotfam.org    Volume 2005-2 (Spring 2005)



**Legislation Issue**

## SECTION INFORMATION

**CHAIR**
Warren Cole, Houston
(713) 966-4444

**CHAIR ELECT**
James E. Loveless, Fort Worth
(817) 831-6800

**VICE CHAIR**
Sally Emerson, Amarillo
(806) 379-0348

**TREASURER**
Wendy Burgower, Houston
(713) 529-3982

**SECRETARY**
Douglas Woodburn, Amarillo
(806) 374-9584

**IMMEDIATE PAST CHAIR**
Tom Vick, Weatherford

### COUNCIL

**Terms Expire 2006**
| | |
|---|---|
| Steve Bavousett | Houston |
| Charlie Hodges | Dallas |
| John Michael | Fort Worth |
| Barbara Nunneley | Hurst |
| JoAl Cannon Sheriden | Jacksonville |

**Terms Expire 2007**
| | |
|---|---|
| Diana S. Friedman | Dallas |
| Paula Larsen | Dallas |
| Kathryn Murphy | Plano |
| Chris H. Negem | San Antonio |
| Randall B. Wilhite | Houston |

**Terms Expire 2008**
| | |
|---|---|
| Jeff Anderson | Dallas |
| Tom Ausley | Austin |
| Ann Coover | Corpus Christi |
| Victor Negron, Jr. | San Antonio |
| Judy Warne | Houston |

**Terms Expire 2009**
| | |
|---|---|
| Heidi Bruegel Cox | Fort Worth |
| Sherri Evans | Houston |
| Michael Jarrett | Tyler |
| Hector Mendez | San Antonio |
| Ellen A. Yarrell | Houston |

**Terms Expire 2010**
| | |
|---|---|
| Charla Bradshaw | Denton |
| Randall Downing | Dallas |
| Heather King | Fort Worth |
| Michael Paddock | Fort Worth |
| Chris Wrampelmeier | Amarillo |

# TEXAS FAMILY CODE LEGISLATION ENACTED BY THE 79th SESSION OF THE TEXAS LEGISLATURE

ALL LEGISLATION
EFFECTIVE SEPTEMBER 1, 2005
(EXCEPT AS OTHERWISE NOTED)

Selected and Compiled by

John J. Sampson
William Benjamin Wynne Professor of Law
University of Texas at Austin
School of Law

and

Harry L. Tindall
Tindall and Foster, P.C.
Houston, TX

**NEWSLETTER EDITOR**
John J. Sampson
University of Texas School of Law
727 East Dean Keeton Street
Austin 78705
512/232-1267; 512/471-6988 (fax)
jsampson@mail.law.utexas.edu

**ASSOCIATE EDITOR**
Cathy Medina, Austin
**CONTRIBUTING EDITOR**
David N. Gray, Houston

**COUNCIL ADMINISTRATIVE ASSISTANT**
Christi A. Lankford, 1-800-263-8099
Section Wear and Publications

© 2005 by the State Bar of Texas. The copyright of a signed article is retained by the author unless otherwise noted. For reprinting authorization, contact the Chairman of the Family Law Section of the State Bar of Texas. All rights reserved.

CHAPTER 154. CHILD SUPPORT

*TERMINATION DOES NOT NECESSARILY MEAN CHILD SUPPORT ENDS*

| SB 6 AMENDS THIS SECTION |
|---|

§ 154.001. Support of Child.

(a-1) The court may order each person who is financially able and whose parental rights have been terminated with respect to a child in substitute care for whom the department has been appointed managing conservator to support the child in the manner specified by the order:

(1) until the earliest of:

(A) the child's adoption;

(B) the child's 18th birthday or graduation from high school, whichever occurs later;

(C) removal of the child's disabilities of minority by court order, marriage, or other operation of law; or

(D) the child's death; or

(2) if the child is disabled as defined in this chapter, for an indefinite period.

Section 154.001, Family Code, as amended by this section, applies only to a person whose parent-child relationship with respect to a child is terminated on or after the effective date of this section. A person whose parent-child relationship is terminated before the effective date of this section is governed by the law in effect on the date the parent-child relationship was terminated, and the former law is continued in effect for that purpose.

*PRIVATE ENTERPRISE VALIDATED*

| HB 2668 AMENDS THIS SECTION |
|---|

§ 154.241. Local Registry.

(g) Notwithstanding any other law, a private entity may perform the duties and functions of a local registry under this section either under a contract with a county commissioners court or domestic relations office executed under Section 204.002 or under an appointment by a court.

This Act takes effect June 17, 2005.

---

[right column, cut off:]

EXCLU

HB 260

§ 155.201.

(a) (
suit for d
parents ha
ing a tra
continuing
the parent
required
ings to th
marriage i
the requir

(b) I
an order is
clusive jur
a party the
Section 1!
county in
other coun

This

§ 155.204.
(a) A
155.201(a)
**must cont
including
been infor**

(b) F
Section 26
or movant
tial pleadir
other party
first Mond
vice of cit
commence

(c) I
and no con
riod allowe
later than
period all
**affidavit,**
ing to the p

(d) [(
the 20th da
transfer is
tion must f
grounds fo